J. A32008/16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| LINDSEY ABERTS | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| PAUL VERNA | : | |
| Appellant | : | |
| | : | No. 1214 EDA 2016 |

Appeal from the Judgment Entered March 22, 2016
In the Court of Common Pleas of Chester County
Civil Division at No(s): 2014-06705-CT

| | | |
|---|---|---|
| LINDSEY ABERTS | : | IN THE SUPERIOR COURT OF |
| Appellant | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| PAUL VERNA | : | |
| | : | |
| | : | No. 1370 EDA 2016 |

Appeal from the Judgment Entered March 22, 2016
In the Court of Common Pleas of Chester County
Civil Division at No(s): 2014-06705-CT

BEFORE: DUBOW, RANSOM AND PLATT, JJ.[*]

MEMORANDUM BY DUBOW, J.:                     **FILED JANUARY 23, 2017**

In these consolidated cross-appeals, Appellant, Paul Verna, appeals

from the Judgment entered against him in the Chester County Court of

Common Pleas following a bench trial and the denial of his Post-Trial Motion

_____

[*] Retired Senior Judge Assigned to the Superior Court.

by operation of law. Appellee, Lindsey Aberts, purports to appeal from the trial court's decision not to award her punitive damages and attorney's fees for work performed by her counsel post-trial. After careful review, we affirm.

The relevant facts, as gleaned from the record, are as follows. Appellee and Appellant entered into an agreement of sale of property located at 3364 Upper Valley Road, Parkesburg, Chester County, Pennsylvania (the "Property") on July 10, 2012. Prior to this transfer of ownership, Appellant had purchased the Property from Denise and Paul Charbonnier by way of an agreement of sale dated December 8, 2010. A title company prepared the deed, dated February 10, 2011, transferring the Property from the Charbonniers to Appellant. With respect to this transfer, Denise Charbonnier executed the deed on February 10, 2011, but Paul Charbonnier did not execute it until March 25, 2011. During the delay, on March 17, 2011, Paul Charbonnier obtained an estimate for the installation of a sump pump in the basement of the Property. The Charbonniers did not install a sump pump in the Property prior to its sale to Appellant.[1]

Settlement on the Property between Appellant and the Charbonniers occurred through an agent for Appellant, William Reynolds ("Reynolds"), who signed on behalf of Appellant at settlement on March 25, 2011. Appellant

---

[1] In fact, neither the Charbonniers, nor Appellant or his agent William Reynolds, installed a sump pump or performed any other water infiltration remediation prior Appellee purchasing the property.

purchased the Property from the Charbonniers to provide Reynolds, his then-employee, a place to live. Reynolds was the sole occupant of the Property during the time between Appellant's purchase of the Property from the Charbonniers and its sale to Appellee. Appellant testified that he never visited the Property at any time.

Appellee purchased the Property from Appellant by deed recorded on September 7, 2012. Prior to the sale, Reynolds completed and executed a "Seller's Property Disclosure Statement" on Appellant's behalf. This Statement affirmatively represented that the Property did not have a sump pump and that the seller was unaware of any water infiltration in the basement or of any attempt to control any basement water problems. Neither Appellant nor Reynolds disclosed to Appellee the existence of any basement water problems, or the March 17, 2011 sump pump installation estimate.

Appellant, although an accountant by trade, has owned approximately 24 properties in the last 15 years, and has transferred his ownership of approximately 12 properties within the last 10 years. Reynolds worked for Appellant for approximately six years as the superintendent of Appellant's second business, a site construction company.

In October 2012, and again in August 2013, Appellant experienced water infiltration damage requiring repairs in the basement of the Property. On April 30, 2014, and June 12, 2014, heavy rain flooded the entire

basement of the Property, depositing standing water in the basement and causing substantial damage. Appellee then obtained inspections and estimates to remediate and repair the damage. Coincidentally, the remediation company that had prepared the March 17, 2011 sump pump estimate also provided Appellee with a remediation estimate. Ultimately, the remediation of the damage caused by the flooding cost Appellee $14,538.85.

On July 16, 2014, Appellee filed a Complaint raising claims that Appellant failed to disclose latent defects in the Property, misrepresented the condition of the Property, and violated the Real Estate Seller Disclosure Law ("RESDL"), 67 Pa.C.S. §§ 7301-7315, and the Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. §§ 201-1 – 201-9.3.2. The parties proceeded to arbitration, after which a panel of arbitrators found in favor of Appellee. Appellant appealed to the Court of Common Pleas for a trial *de novo*

The trial court held a one-day trial on August 10, 2015, at which Appellee and Appellant testified.[2] Following its consideration of the evidence, including, *inter alia*, the parties' testimony; the March 17, 2011 sump pump installation estimate; the February 11, 2011 deed transferring the Property to Appellant signed on February 11, 2011, by Denise

---

[2] Neither party offered the testimony of the Charbonniers or Reynolds.

Charbonnier and on March 25, 2011, by Paul Charbonnier; and the July 6, 2012 Seller's Property Disclosure Statement[3] signed by Appellant, the trial court entered a verdict of $14,538.85 in favor of Appellee and against Appellant on all counts. The court also awarded Appellee counsel fees of $5,867.50.

In reaching its decision, the trial court concluded that the delay that occurred between Denise Charbonnier's February 10, 2011 execution of the deed transferring the Property and the March 25, 2011 execution of the deed by Paul Charbonnier evidenced a purposeful delay in the conveyance of the Property. The trial court attributed the delay to the discovery by Reynolds of a water infiltration problem in the basement. The trial court also determined that prior to March 25, 2011, Appellant knew of a water infiltration issue at the Property through the knowledge acquired by his agent, William Reynolds, during the Property conveyance process with the Charbonniers.

On October 30, 2015, Appellant filed a Post-Trial Motion for Judgment Notwithstanding the Verdict or a New Trial, in which Appellant argued that (1) the trial court erred in finding that Appellee presented sufficient evidence that Reynolds knew about the sump pump installation estimate and imputing that knowledge to Appellant; and (2) the RESDL provides only for recovery

---

[3] As noted **supra**, Reynolds completed and executed the Seller's Property Disclosure Statement on Appellant's behalf. Reynolds affirmatively represented in the Statement that the Property did not have a sump pump and that the seller was unaware of any water infiltration in the basement or of any attempt to control any basement water problems.

of actual damages, thus the trial court erred in awarding Appellee attorney's fees. On November 9, 2015, Appellee also filed a Post-Trial Motion alleging that the trial court erred in not awarding her punitive damages as permitted by the UTPCPL.

On January 28, 2016, the court held oral argument on the Motions. Subsequent to the court conducting oral argument, all Post-Trial Motions were denied by operation of law. On March 22, 2016, Appellee filed a *Praecipe* for Entry of Judgment, and the Prothonotary entered Judgment in her favor.

Appellant filed a timely Notice of Appeal on April 13, 2016. On April 27, 2016, Appellee filed a timely cross-appeal. Appellant, Appellee, and the trial court all complied with Pa.R.A.P. 1925.

Appellant raises the following issues on appeal:

> 1. Whether the [t]rial [c]ourt's verdict in the [Appellee's] favor was erroneous and an abuse of discretion, given the lack of evidence showing [Appellant's] knowledge of water infiltration into the Property prior to the sale of the Property to [Appellee].

> 2. Whether the [t]rial [c]ourt's award of attorney['s] fees was in error given the lack of any evidence of any fraud on the part of [Appellant].

Appellant's Brief at 4.

Appellee raised the following issues in her Pa.R.A.P. 1925(b) statement:

> 1. [The trial court erred when i]t did not assess sanction damages authorized by 73 P.S. 201-9.2 despite ample

evidence of fraudulent conduct including knowledge of water infiltration from actual pre[-]sale inspection.

2. The [c]ourt did not reassess amount of attorney fees for post[-]verdict costs to client and should do so when the appeal is denied because the legal fees are continuing.

3. The [c]ourt erred by utilizing a punitive damages analysis and therefore declining to double or treble damages where our Supreme Court has held that the purposes of the [UTPCPL] are best served when the [c]ourt is not "closely constrained" to punitive damages analysis. It held that the [c]ourt is free to exercise its discretion to closely address shady commercial practices because they are invariably intentional, extract benefits from victims by unfair advantage[,] and need to be discouraged. *Schwartz v. Rockey*, 932 A.2d 885 (Pa. 2007).

4. The [c]ourt must assess sanction damages to make the risk of loss from the choice to conceal the defect greater than the cost of disclosure and cure before sale to insure that sellers' conduct conforms to the law.

Appellee's Pa.R.A.P. 1925(b) Statement, 5/11/16.

Appellee, however, did not re-raise these issues in her appellate brief. In fact, her brief contains no Statement of Questions Involved. Moreover, in the Argument section of her brief, she has failed to present any independent argument at all, including argument in support of the errors she alleged in her Rule 1925(b) Statement. Accordingly, we find that Appellee abandoned her issues on appeal and conclude that they are waived.

Appellant's first issue on appeal essentially challenges the sufficiency of Appellee's evidence that Appellant had constructive knowledge of water infiltration prior to the sale of the property to Appellee. Appellant does not dispute that Reynolds was Appellant's agent. However, Appellant argues

that Appellee did not present any evidence that Reynolds knew about the sump pump installation estimate obtained by the Charbonniers prior to Appellant purchasing the property from them. Appellant's Brief at 8. He claims that the court's inference that Reynolds knew about a water infiltration problem in the Property's basement solely because of the delay in the Charbonniers' execution of the deed conveying the Property to Appellant, and the subsequent imputation of that knowledge to Appellant, was unreasonable. *Id.* at 8-9.

Our standard of review of a trial court's denial of a Motion for Judgment Notwithstanding the Verdict is as follows:

> Whether, when reading the record in the light most favorable to the verdict winner and granting that party every favorable inference therefrom, there was sufficient competent evidence to sustain the verdict. Questions of credibility and conflicts in the evidence are for the trial court to resolve and the reviewing court should not reweigh the evidence. Absent an abuse of discretion, the trial court's determination will not be disturbed.

*Holt v. Navarro*, 932 A.2d 915, 919 (Pa. Super. 2007) (quotation omitted).

Furthermore:

> There are two bases upon which a JNOV can be entered: one, the movant is entitled to judgment as a matter of law, and/or two, the evidence was such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant. With the first, a court reviews the record and concludes that even with all factual inferences decided adverse to the movant the law nonetheless requires a verdict in his favor, whereas with the second, the court reviews the evidentiary record and concludes that the evidence was such that a verdict for the movant was beyond peradventure.

*Id.* (quotation omitted). "When reviewing a trial court's denial of a [M]otion for JNOV, we must consider all of the evidence admitted to decide if there was sufficient competent evidence to sustain the verdict. Concerning any questions of law, our scope of review is plenary. Concerning questions of credibility and weight accorded the evidence at trial, we will not substitute our judgment for that of the finder of fact. A JNOV should be entered only in a clear case." *Id.* (quotation omitted).

The trier of fact must reach its verdict on more than mere speculation or conjecture; there must be evidence upon which its decision is logically based. *Smith v. Bell Tel. Co. of Pa.* 153 A.2d 477, 479 (Pa. 1959). The trier of fact may draw reasonable inferences based on the evidence and its own knowledge and experience. *Id.* Circumstantial evidence is admissible, and even sufficient, to prove an element of a cause of action. *Id.* at 480. However, when a plaintiff relies primarily or solely upon circumstantial evidence and inferences reasonably deducible from such evidence, the evidence presented by the plaintiff must be "so preponderate in favor of that conclusion as to outweigh in the mind of the fact-finder any other evidence and reasonable inferences therefrom which are inconsistent therewith." *Id.*

In the instant matter, the trial court based its verdict in favor of Appellee on disclosures made by Reynolds in the Seller's Property Disclosure Statement in accordance with the RESDL. *See* Trial Ct. Op., 6/27/16, at 4. The RESDL provides that "[a]ny seller who intends to transfer any interest in

real property shall disclose to the buyer any material defects with the property known to the seller by completing all applicable items in a property disclosure statement[.]" 68 Pa.C.S. § 7303. The trial court concluded from the circumstantial evidence presented by Appellee that Appellant knew about, but failed to disclose to Appellee, a material defect, *i.e*, a known history of water infiltration in the Property. **See** Trial Ct. Op. at 4. We agree.

With respect to its conclusion that Appellant was aware of the water infiltration problem in the basement of the Property, the trial court opined as follows:

> There is ample evidence in the record to support the reasonable inference that Mr. Reynolds had actual knowledge of the water infiltration problem and that his knowledge was imputed to Appellant. Specifically, the record evidences that [Appellee] sustained her burden of proof under the preponderance of the evidence standard. It is uncontroverted that the conveyance of the Property from the Charbonniers to [Appellant] (through Mr. Reynolds) was intentionally delayed for more than one month. The delay is evidenced by the deed transferring the Property from the Charbonniers to Defendant that was prepared by the title company on February 10, 2011. The deed was executed by Mr. Charbonnier approximately 44 days after Mrs. Charbonnier. It is unrefuted that[,] during the delay in Closing, Mr. Charbonnier obtained an estimate for the installation of a sump pump at the property. Although an estimate for a sump pump is not conclusive of a history of water infiltration, common sense dictates that Mr. Charbonnier would not have delayed Closing and obtained the estimate if no water infiltration problem existed that could be addressed by the installation of a sump pump. No alternative explanation for the delay in Closing was presented at trial. Mr. Reynolds, acting as [Appellant's] agent would have had knowledge of the delay

in closing. Due to the proximity of the sump pump estimate and Closing, it was reasonable for the fact-finder to infer that [Appellant] would have been advised of the delay by his bank, Mr. Reynolds, or some other party associated with the transaction. Even if [Appellant] was not informed, his agent, Mr. Reynolds, was in possession of that information as of the Chrabonnier Closing on March 25, 2011[,] and the [Appellee's] closing in 2012. Likewise, it is clear that [Appellee] was never informed of the water infiltration issue or estimate by [Appellant]. Rather, [Appellant] actively omitted the issue from the Seller's Disclosure Statement completed by Mr. Reynolds. As a result of the concealment[, Appellee] suffered damages. The greater weight of the evidence at trial tips the scale in favor of [Appellee]. Accordingly, the evidence in this case is sufficient to return a Verdict in favor of [Appellee] on all claims.

Trial Ct. Op. at 6-7.

Our review of the facts as set forth *supra*, indicates that, based on the evidence, including circumstantial evidence, presented by Appellee at trial, the trial court reasonably concluded that there was or had been a water infiltration problem at the time of the sale of the Property to Appellant; that Appellant's agent, and therefore Appellant, had knowledge of the water infiltration issue at the Property; that Appellant concealed this information from Appellee; and that, as a result of the concealment, Appellee suffered damages. Accordingly, Appellant's sufficiency argument lacks merit.

In his second issue, Appellant claims that the trial court erred in awarding Appellee attorney's fees. Appellant notes that, of the claims raised by Appellee, only the UTPCPL, and not the RESDL, provide for an award of attorney's fees. However, in order to recover attorney's fees pursuant to the

UTPCPL, Appellant argues, relying on ***Feeney v. Disston Manor Pers. Care Home, Inc.***, 849 A.2d 590 (Pa. Super. 2001), that Appellee was required to prove statutory fraud by clear and convincing evidence. Since the trial court applied a "preponderance of the evidence" standard of proof, rather than a heightened "clear and convincing" standard of proof, Appellant claims that Appellee failed to establish a right to relief under the UTPCPL. Appellant's Brief at 4. Appellant also avers that as an "innocent party himself,"—a victim of Reynolds' deception—awarding Appellee attorney's fees is inconsistent with the UTPCPL's purpose. ***Id.*** at 5.

Following the trial in this matter, the trial court concluded that Appellee was entitled to attorney's fees pursuant to the UTPCPL. ***See*** Trial Ct. Op. at 7. We review this decision for an abuse of discretion. ***Neal v. Bavarian Motors, Inc.***, 882 A.2d 1022, 1029 (Pa. Super. 2005).

The UTPCPL provides a private right of action for anyone who "suffers any ascertainable loss of money or property" as a result of "an unlawful method, act or practice." 73 P.S. § 201-9.2. Section 201-2(4) lists twenty enumerated practices which constitute actionable "unfair methods of competition" or "unfair or deceptive acts or practices," including a catch-all provision proscribing "fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding." 73 P.S. § 201-2(4).

Additionally, we point out that:

> The UTPCPL is Pennsylvania's consumer protection law and
> seeks to prevent unfair methods of competition and unfair

> or deceptive acts or practices in the conduct of any trade or commerce. The purpose of the UTPCPL is to protect the public from unfair or deceptive business practices. Our Supreme Court has stated courts should liberally construe the UTPCPL in order to effect the legislative goal of consumer protection. The UTPCPL provides a private right of action for anyone who suffers any ascertainable loss of money or property as a result of an unlawful method, act or practice.

*Fazio v. Guardian Life Ins. Co. of America*, 62 A.3d 396, 405 (Pa. Super. 2012) (quotation omitted). "To bring a private cause of action under the UTPCPL, a plaintiff must show that he justifiably relied on the defendant's wrongful conduct or representation and that he suffered harm as a result of that reliance." *Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425, 438 (Pa. 2004).

In reviewing this allegation of error, the trial court concluded that Appellant's reliance on *Feeney*, *supra*, was misplaced. Based on our review of the record, the arguments presented by the parties, and the relevant case law and statutes, we agree. The trial court's Opinion addressing Appellant's claim, and the applicable law, is thorough and well-reasoned. *See* Trial Ct. Op. at 8-10 (concluding that, pursuant to the holding in *Boehm v. Riversource Life Ins. Co.*, 117 A.3d 308, 321 (Pa. Super. 2015), the preponderance of the evidence standard applies to fraud claims brought under the catch-all provision of the UTPCPL). Accordingly, we adopt that analysis as our own, and conclude that the trial court did not abuse its

discretion in awarding Appellee attorney's fees. Thus, Appellant is not entitled to relief on this issue.

Judgment affirmed. The parties are directed to attach a copy of the trial court's June 27, 2016 Opinion in the event of further proceedings.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/23/2017



SENT                SENT

JUN 29 2016        JUN 9 2 2016

LINDSEY ABERTS                    : IN THE COURT OF COMMON PLEAS

                                 : CHESTER COUNTY, PENNSYLVANIA

        v.

                                 : CIVIL ACTION

PAUL VERNA                       : NO. 2014-06705

Michael J. Reed, Esquire, Attorney for Plaintiff
Christopher J. Amentas, Esquire, Attorney for Defendant

**OPINION**

**AND NOW**, this 27 day of June, 2016, this Opinion is filed pursuant to Pa. R.A.P. 1925 in

response to Paul Verna's ("Defendant") April 13, 2016 appeal from the denial of post-trial

motions and judgment entered in the docket on March 22, 2016 and the cross-appeal filed by

Plaintiff on April 27, 2016.

**PROCEDURAL AND FACTUAL HISTORY**

The current appeals arise from the sale of real property located at 3364 Upper Valley
Road, Parkesburg, Chester County, Pennsylvania (the "Property"). Following a one (1) day,
non-jury trial held on August 10, 2015, this Court entered a verdict in favor of Plaintiff and
against Defendant on all counts[1] and in the amount of $14,538.85. Furthermore, the Court
awarded counsel fees on Count IV Unfair Trade Practices and Consumer Protection Law
(hereinafter, "UTPCPL") of the Complaint in the amount of $5,867.50.[2]

On October 30, 2015, Defendant filed post-trial motions.[3] On November 9, 2015,
Plaintiff also filed post-trial motions. On January 28, 2016, oral argument was held on the post-
trial motions. Subsequent to the Court conducting oral argument, all post-trial motions were
denied by operation of law. On March 22, 2016, judgment was entered in the docket.[4]

A timely Notice of Appeal was filed by Defendant on April 13, 2016. On April 27, 2016,
Plaintiff filed a timely cross-appeal. By Orders dated April 14th and April 29th of 2016,
respectively, the parties were directed to file and serve upon the undersigned a Concise

---

[1] The Complaint filed in this matter contained the following claims: Count I Failure to Disclose Latent Defects;
Count II Misrepresentation; Real Estate Sales Disclosures Law (hereinafter, "RESDL") and Count IV UTPCPL.
[2] On October 21, 2015, the Court issued its Findings of Fact, Conclusions of Law, and Verdict in this matter.
[3] Defendant's post-trial motion was procedurally deficient. Specifically, the post-trial motion did not contain a
Certificate of Service or Praecipe for Determination. Subsequently, these deficiencies were corrected. See Docket.
[4] See Pa.R.C.P. No. 236.

1

Statement of Errors Complained of on Appeal "Concise Statement". On May 5, 2016, Defendant filed a Concise Statement. Similarly, Plaintiff filed her Concise Statement on May 11, 2016.

The salient facts found giving rise to the appeals now before us are reproduced from the Court's Findings of Fact and are as follows:

1. Plaintiff and Defendant entered into an agreement of sale for a residence located at 3364 Upper Valley Road, Parkesburg, PA (the "Property") on July 10, 2012.

2. Defendant purchased the Property from Denise and Paul Charbonnier by way of agreement of sale dated December 8, 2010.

3. The deed transferring the Property from the Charbonniers to Defendant was prepared by the title company, was dated February 10, 2011, but was executed by Denise Charbonnier on February 10, 2011 and by Paul Charbonnier on March 25, 2011.

4. The difference between the February 10, 2011 date of the deed, the February 10, 2011 execution of that deed by Denise Charbonnier, and the March 25, 2011 execution of the deed by Paul Charbonnier indicates a purposeful delay in the conveyance of the Property.

5. During this delay, a March 17, 2011 estimate was obtained by Paul Charbonnier for the installation of a sump pump in the basement at the Property.

6. Settlement on the Property between Defendant and the Charbonniers occurred through an agent for Defendant, that agent being William Reynolds, who signed on behalf of Defendant at settlement on March 25, 2011. See Exhibit D-2.

7. Prior to March 25, 2011, Defendant knew of a water infiltration issue at the Property through the knowledge acquired by his agent, William Reynolds, acquired during the Property conveyance process between the Charbonniers and Defendant.

8. Defendant purchased the Property from the Charbonniers to provide his employee, agent William Reynolds, a residence.

9. William Reynolds was the sole occupant of the Property during the relevant time between Defendant's purchase of the residence from the Charbonniers until its sale to Plaintiff herein.

10. The estimate for the installation of a sump pump received by Paul Charbonnier, dated March 17, 2011, did not result in the installation of the sump pump or any water infiltration remediation by the Charbonniers, Defendant or William Reynolds prior to Plaintiff's purchase of the Property.

11. Prior to the execution of the agreement of sale between the parties herein on July 6, 2012, Defendant's "Seller's Property Disclosure Statement" for the Property was completed and executed by William Reynolds on behalf of Defendant and affirmatively represented that the

2

Property had no sump pump and that seller was unaware of any water infiltration in the basement and was further unaware of any attempt to control any basement water problems. See Ex. P-3.

12. William Reynolds was aware of the delay in settlement between the Charbonniers and Defendant between February 10, 2011 and March 25, 2011, during which the Charbonniers obtained the estimate to install a sump pump in the basement of the Property.

13. Defendant, an accountant by trade, has owned approximately twenty-four (24) properties within the last fifteen (15) years; and currently owns four (4) residential properties and has transferred his ownership in approximately twelve (12) properties within the last ten (10) years.

14. William Reynolds was employed by Defendant for approximately six (6) years as the superintendent of Defendant's second business, a site construction company.

15. Neither Defendant nor William Reynolds disclosed to Plaintiff the existence of any basement water problems, any attempts to control any basement water problems, or the March 17, 2011 proposed sump pump remediation for the Property prior to the agreement of sale or within the Seller's Disclosure Statement.

16. Plaintiff purchased the Property from Defendant by deed recorded on September 7, 2012.

17. In October of 2012, and again in August of 2013, Plaintiff experienced water infiltration damage and repairs in the basement of the Property.

18. On April 30 and June 12, 2014, there was heavy rain that infiltrated the entire basement of the Property which deposited standing water in the basement and caused substantial damage.

19. Plaintiff then obtained inspections and estimates to remediate and repair the water infiltration problem in the basement of the Property.

20. One of those estimates obtained by Plaintiff was from the same remediation company that prepared the March 17, 2011 proposal for Paul Charbonnier.

21. Plaintiff suffered water infiltration damages in the amount of $14,538.85.

22. Plaintiff incurred legal fees directly related to Defendant's non-disclosure in the amount of $5,867.50.

See Findings of Fact, 10/21/15.

**DISCUSSION**

We will now address the issues raised in Defendant's Concise Statement. Defendant raises two (2) issues on appeal for our review. Those issues in Defendant's own words are as follows:

3

1. The Trial Court's Verdict in Plaintiff's favor was erroneous and an abuse of discretion, because of a lack of evidence showing Defendant's knowledge of water infiltration into the property.

2. The Trial Court erroneously awarded attorney fees to Plaintiff in this instance.

Def.'s Concise Statement, 5/5/16.

Insofar as Defendant's sufficiency of the evidence challenge is concerned, we disagree with this argument. In this case, we applied a fair preponderance of the evidence standard to all of Plaintiff's claims.[5] See Conclusions of Law, 10/21/15. In Commonwealth v. Roy L. Williams, 732 A.2d 1167 (Pa. 1999), the Pennsylvania Supreme Court explained what the preponderance of evidence standard of proof requires. The preponderance of evidence standard requires proof "by a greater weight of the evidence." Id. at 1187. The standard was further explained by the Commonwealth Court in Commonwealth v. McJett, 811 A.2d 104 (Pa. Cmwlth. 2002) (citations omitted). "Preponderance of the evidence is tantamount to a 'more likely than not standard.' ... Proof by a preponderance of the evidence is 'often alluded to as a weighing of the evidence and a determination based upon which way the mythical scales are tipped.' " Id. at 110.

Having now set forth the evidentiary standard that we applied in this case, we next turn to underlying sufficiency of the evidence challenge. Here, Plaintiff's causes of action required, as a necessary element, proof that Defendant knew about but failed to disclose a known history of water infiltration in the Property.[6] The crux of Mr. Verna's defense is that he is not liable to Plaintiff because he never set foot on the property and, therefore, had no knowledge of prior water infiltration or sump pump estimate. We disagree with Defendant's argument.

---

[5] As discussed in more detail, *infra*, a preponderance of the evidence standard was also applied to Plaintiff's UTPCPL claim.

[6] The Verdict against Defendant is predicated upon disclosures made by William Reynolds in a "Seller's Property Disclosure Statement", the completion of which is mandated by RESDL. See 68 P.a.C.S. § 7301, *et seq.* The RESDL became effective December 20, 2001 and, therefore, applies to the real estate transaction at issue in this case.

The RESDL, 68 Pa.C.S.A. § 7301 *et seq.*, provides that "any seller who intends to transfer any interest in real property shall disclose to the buyer any material defects with the property known to the seller by completing all applicable items in a property disclosure statement which satisfies the requirements of section 7304 (relating to disclosure form)." 68 Pa.C.S.A.§ 7303. The RESDL further provides, in pertinent part, "If information disclosed in accordance with this chapter is subsequently rendered inaccurate prior to final settlement as a result of any act, occurrence or agreement subsequent to the delivery of the required disclosures, the seller shall notify the buyer of the inaccuracy." 68 Pa.C.S.A. § 7307.

Section 7311 provides for the recovery of actual damages in the event of a violation of the RESDL, but does not provide for the recovery attorney fees. Section 7311(a) of RESDL, provides that a person who willfully or negligently violates or fails to perform any duty described by any provision of this chapter shall be liable in the amount of actual damages suffered by the buyer as a result of a violation of this chapter. This subsection shall not be construed so as to restrict or expand the authority of a court to impose punitive damages or apply other remedies applicable under any other provision of law.

4

The Verdict was proper in this case as the circumstantial evidence presented at trial was sufficient to support the Verdict by a preponderance of the evidence.[7] Pursuant to the well-established principles of agency law, Defendant is attributed with the water infiltration knowledge of his agent, William Reynolds, and is responsible for Mr. Reynold's actions. It is well settled in "the law of this jurisdiction that knowledge of an agent, acting within the scope of his authority, real or apparent, may be imputed to the principal, and therefore, knowledge of the agent is knowledge of the principal." Restatement (Third) of Agency § 5.03; W.C.A.B. v. The Evening Bulletin, 445 A.2d 1190, 1192 (Pa. 1982). However, the agent's awareness of a given fact is not imputed to the principal if knowledge of the fact is not material to his duties to the principal. Restatement (Third) of Agency § 5.03; Gresik v. PA Partners, L.P., 989 A.2d 344 (Pa. Super. 2009).

Applying Section 5.03 of the Restatement to our case, we concluded that the knowledge of the water infiltration issue was acquired by William Reynolds, as an agent, while working for Defendant and was imputable to Defendant, who was the seller of the Property in this litigation. The record is devoid of any evidence that Mr. Reynolds was operating outside the scope of his authority during either the purchase or sale of the Property.

Our review of the trial record reveals that although Defendant is an accountant by trade, he is experienced in real estate transactions. N.T., 8/10/15, at 64-68. Mr. Reynolds was employed by Defendant for approximately six (6) years as the superintendent of Defendant's site construction company. It is uncontroverted that Defendant purchased the Property from Denise and Paul Charbonnier by way of agreement of sale dated December 8, 2010. Settlement on the Property between Defendant and the Charbonniers occurred through Mr. Reynolds, a designated agent for Defendant, who signed on behalf of Defendant at settlement on March 25, 2011. See N.T., 8/10/15, at 75-76; see also Exhibit D-2. Defendant acknowledged that he purchased the Property from the Charbonniers to provide Mr. Reynolds a residence. Mr. Reynolds was the sole occupant of the Property during the relevant time between Defendant's purchase of the Property from the Charbonniers until its sale to Plaintiff herein.

Notably, the deed transferring the Property from the Charbonniers to Defendant was prepared by the title company, and dated February 10, 2011. The deed was executed by Denise Charbonnier on February 10, 2011 and by Paul Charbonnier on March 25, 2011. The difference between the February 10, 2011 date of the deed, the February 10, 2011 execution of that deed by Denise Charbonnier, and the March 25, 2011 execution of the deed by Paul Charbonnier

---

[7] The trier of fact may not be permitted to reach its verdict merely on the basis of speculation or conjecture, but that there must be evidence upon which logically its conclusion may be based. Schofield v. King, 130 A.2d 93 (Pa. 1957); Connor v. Hawk, 128 A.2d 566 (Pa. 1957); Ebersole v. Beistline, 82 A.2d 11 (Pa. 1951). Clearly this does not mean that the trier of fact may not draw inferences based upon all the evidence and the fact-finder's own knowledge and experiences, for that is, of course, the very heart of the fact-finder's function.

There is no doubt that circumstantial evidence is admissible and even sufficient to prove an element of a cause of action, Smith v. Bell Telephone Co., 153 A.2d 477 (Pa. 1959), and there is a level of such evidence required to sustain the party's burden of proof. "For one offering only circumstantial evidence to prevail, the evidence must so preponderate in favor of the offeror's conclusion that it outweighs any other evidence and reasonable inferences therefrom which are inconsistent therewith." Houston v. Canon Bowl, Inc., 278 A.2d 908, 911 (Pa. 1971); Quirk v. Girard Trust Bank, 331 A.2d 781 (Pa. Super. 1974).

5

indicates a purposeful delay in the conveyance of the Property. During this delay, a March 17, 2011 estimate was obtained by Paul Charbonnier for the installation of a sump pump in the basement at the Property. The estimate for the installation of a sump pump did not result in the installation of the sump pump or any water infiltration remediation by the Charbonniers, Defendant or William Reynolds prior to Plaintiff's purchasing the Property. N.T., 8/10/15, at 70-75.

Although Defendant testified at trial that he never set foot on the Property, Mr. Reynolds would have been aware of the delay in settlement between the Charbonniers and Defendant between February 10, 2011 and March 25, 2011, as an agent, during which the Charbonniers obtained the estimate to install a sump pump in the basement of the Property. Neither Defendant nor Mr. Reynolds disclosed to Plaintiff the existence of any basement water problems or any attempts to control the water problems at the Property prior to the agreement of sale. Rather, prior to the execution of the agreement of sale between the parties herein on July 6, 2012, Defendant's "Seller's Property Disclosure Statement" for the Property was completed and executed by William Reynolds as Tenant with apparent agent authority. Defendant ratified the Seller's Disclosure Form and the representations made therein by Mr. Reynolds. Specifically, both Mr. Reynolds and Defendant affirmatively represented that the Property had no sump pump and that seller was unaware of any water infiltration in the basement and was further unaware of any attempt to control any basement water problems. See Ex. P-3.

The instant matter proceeded as a bench trial wherein we credited the trial testimony of Plaintiff.[8] It is well settled that in such cases, the trial court, as the trier of fact, is free to believe all, part or none of the evidence presented and, therefore, assessments of credibility and conflicts in evidence are for the trial court to resolve. Reviewing courts are not permitted to reexamine the weight and credibility determinations or substitute its judgment for that of the fact-finder. Adamski v. Miller, 681 A.2d 171, 173 (Pa. 1996).[9]

There is ample evidence in the record to support the reasonable inference that Mr. Reynolds had actual knowledge of the water infiltration problem and that his knowledge was imputed to Defendant. Specifically, the record evidences that Plaintiff sustained her burden of proof under the preponderance of the evidence standard. It is uncontroverted that the conveyance of the Property form the Charbonniers to Defendant (through Mr. Reynolds) was intentionally delayed for more than one month. The delay is evidenced by the deed transferring the Property from the Charbonniers to Defendant that was prepared by the title company on February 10, 2011. The deed was executed by Mr. Charbonnier approximately 44 days after Mrs. Charbonnier. It is unrefuted that during the delay in Closing, the Mr. Charbonnier obtained an estimate for the installation of a sump pump at the Property. Although an estimate for a sump pump is not conclusive of a history of water infiltration, common sense dictates that Mr. Charbonnier would not have delayed Closing and obtained the estimate if no water infiltration

---

[8] Neither Mr. Reynolds nor the Charbonniers were called as a witness at trial.

[9] Further, we note that the findings of the judge in a non-jury trial are given the same weight and effect as a jury verdict such that the court's findings will not be disturbed on appeal absent an abuse of discretion, error of law, or lack of support in the record. Olmo v. Matos, 653 A.2d 1, 3 (Pa. Super. 1994), appeal denied, 664 A.2d 542 (Pa. 1995).

6

problem existed that could be addressed by the installation of a sump pump. No alternative explanation for the delay in Closing was presented at trial. Mr. Reynolds, acting as Defendant's agent would have had knowledge of the delay in Closing. Due to the proximity of the sump pump estimate and Closing, it was reasonable for the fact-finder to infer that Defendant would have been advised of the delay by his bank, Mr. Reynolds or some other party associated with the transaction. Even if Defendant was not informed, his agent, Mr. Reynolds, was in possession of that information as of the Charbonnier Closing on March 25, 2011 and the Plaintiff's Closing in 2012. Likewise, it is clear that Plaintiff was never informed of the water infiltration issue or estimate by Defendant. Rather, Defendant actively omitted the issue from the Seller's Disclosure Statement completed by Mr. Reynolds.[10] See Ex. P-3. As a result of the concealment Plaintiff suffered damages. The greater weight of the evidence at trial tips the scale in favor of Plaintiff. Accordingly, the evidence in this case is sufficient to return a Verdict in favor of Plaintiff on all claims.

Defendant next contends only that the trial court applied the wrong standard of proof to the Plaintiff's UTPCPL claim.[11] According to Defendant, the Court should have used the clear and convincing standard rather than the less stringent preponderance of the evidence standard. We disagree with this argument.

We note that the Court neither applied the heightened standard nor reasoned that Plaintiff established her UTPCPL by clear and convincing evidence. Because the Plaintiff can satisfy the preponderance of the evidence standard, she is entitled to an award of attorney fees. Attorney fees are only recoverable under her UTPCPL claim and she has established a right to relief under the less stringent standard. Therefore, attorney fees were properly awarded to Plaintiff.

The UTPCPL provides a private right of action for anyone who "suffers any ascertainable loss of money or property" as a result of "an unlawful method, act or practice." Upon a finding of liability, the court has the discretion to award "up to three times the actual damages sustained" and provide any additional relief the court deems proper. Section 201–2(4) lists twenty enumerated practices which constitute actionable "unfair methods of competition" or "unfair or deceptive acts or practices." The UTPCPL also contains a catchall provision at 73 P.S. § 201–2(4)(xxi). The pre–1996 catchall provision prohibited "fraudulent conduct" that created a likelihood of confusion or misunderstanding. In 1996, the General Assembly amended the UTPCPL and revised Section 201–2(4)(xxi) to add "deceptive conduct" as a prohibited practice. The current catchall provision proscribes "fraudulent **or deceptive conduct** which creates a likelihood of confusion or of misunderstanding." Bennett v. A.T. Masterpiece Homes at Broadsprings, LLC, 40 A.3d 145, 151–152 (Pa. Super. 2012) (emphasis added). See also Agliori v. Metropolitan Life Ins. Co., 879 A.2d 315, 318 (Pa. Super. 2005) (stating purpose of UTPCPL is to protect consumer public and eradicate unfair or deceptive business practices; foundation of UTPCPL is fraud prevention, and its policy is to place consumer and seller of goods and services

---

[10] The Seller's Property Disclosure Statement was completed by Mr. Reynolds as a Tenant with apparent agent authority. Thereafter, Defendant ratified Mr. Reynolds's representations made therein. Specifically, Defendant signed the Seller's Disclosure Statement affirmatively representing that the Property had no sump pump and that the seller was unaware of any water infiltration in the basement and was further unaware of any attempt to control any basement water problems.

[11] Count IV of Plaintiff's complaint, sounding in Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), is the only Count of the Complaint providing for the discretionary award of attorney fees.

7

on more equal terms; courts should construe its provisions liberally to serve remedial goals of statute). The Pennsylvania Supreme Court has stated courts should liberally construe the UTPCPL in order to effect the legislative goal of consumer protection. Com., by Creamer v. Monumental Properties, Inc., 329 A.2d 812, 816 (Pa. 1974).

Despite the liberal construction of the UTPCPL, Defendant relies on Feeney v. Disston Manor Pers. Care Home, Inc., 849 A.2d 590 (Pa. Super. 2004), in support of his argument that clear and convincing evidence is required to establish a violation of the UTPCPL. In Feeney, the Superior Court stated that in order to recover on a claim of fraud under the UTPCPL, including the catchall provision, a plaintiff must prove the six elements governing a fraud claim "**by clear and convincing evidence**." Feeney, 849 A.2d at 597 (emphasis added); Debbs v. Chrysler Corp., 810 A.2d 137, 155 (Pa. Super. 2002). However, in Feeney, the appellate court merely affirmed the trial court's grant of summary judgment for the defendant on the plaintiff's UTPCPL claim because there was nothing in the record to suggest that the defendants engaged in any fraudulent conduct intending to mislead the plaintiff. Similarly the Debbs case is not dispositive on the requisite burden of proof required to establish a violation of the UTPCPL. In Debbs, the Superior Court ordered the trial court to decertify the class action suit because the trial court erred when it concluded that the commonality requirement was met. Accordingly, we find that Defendant's reliance on Feeney is misplaced.

We conclude that the recent Superior Court decision in Boehm v. Riversource Life Ins. Co., 117 A.3d 308, 322 (Pa. Super. 2015), appeal denied, 126 A.3d 1281 (Pa. 2015), is controlling in the case at bar. In Boehm, the appellate court held that the trial court correctly applied a preponderance of the evidence standard of proof to the plaintiffs' UTPCPL claims. Although, Boehm concerned fraud claims brought under the pre-amendment "catchall" provision of the UTPCPL, we see no reason why the holding of the case should not also apply to post-amendment claims. Logic dictates that if a fraud claim brought under the pre-amendment catchall provision required a plaintiff to prove common law fraud by a preponderance of the evidence then a more stringent burden should not apply to a post-amendment catchall claim when a Plaintiff no longer has to prove common law fraud. See Bennett, 40 A.3d at 152-155.

In reaching its decision, the Boehm court reasoned:

> [I]n the predominant number of civil cases, where only economic and property interests are at stake, the evidentiary burden requires only proof by a preponderance of the evidence. Section 201–9.2 of the UTPCPL, providing for private actions, does not set forth which standard of proof applies, and apparently the matter has never been decided by the Pennsylvania Supreme Court. There is no language anywhere in the UTPCPL suggesting that private actions brought pursuant to Section 201–9.2 should be governed by a more demanding standard of proof than proof by a preponderance of the evidence. Moreover, the preponderance of the evidence standard of proof, which is the standard usually applied to remedial legislation, is consistent with the UTPCPL's purpose of protecting the public from fraud and unfair or deceptive business practices.

8

Boehm, 117 A.3d at 322.

Additionally, the Boehm court cited the well-reasoned opinion of Judge Wettick, Jr. stating as follows:

> While not binding on this court, we find the Honorable R. Stanton Wettick, Jr.'s opinion on this issue in the case of Eck v. Metropolitan Life Ins. Co., 2006 WL 6346564 (Allegheny Co.2006), to be persuasive. Therein, Judge Wettick notes that the UTPCPL is one of many laws protecting consumers which permit private actions, including the Real Estate Seller Disclosure Law, the Goods and Services Installment Sales Act, and the Credit Services Act. There is no case law which suggests that the Legislature intended for private actions, brought pursuant to any of these other laws protecting consumers, to be governed by more demanding proof than a preponderance of the evidence. I have not been offered any reason why the Legislature would have intended for only Consumer Protection Law claims to be governed by a higher standard.

Id. at 18-20 (footnote omitted).

Judge Wettick's opinion clearly rejected the idea that clear and convincing evidence applies to all fraud claims by stating:

> I next consider the contention that a standard of clear and convincing evidence should be applied whenever a court characterizes a claim as fraud-based. As I previously discussed, there is no language in the Consumer Protection Law, in other consumer protection acts, in any legislative history, or in any Pennsylvania appellate court case law which supports this construction of the Consumer Protection Law. While judicially created tort law may, in setting a standard of proof, distinguish between fraud-based claims and other claims, this is not a distinction that legislators are likely to make. Consequently, a court should not assume that the Legislature intended to make such a distinction where there is no language in the legislation suggesting such a distinction.
>
> I believe that if the Consumer Protection Law did not include the catchall provision, courts, without discussion, would be applying a preponderance of the evidence standard to all private actions. A claim that the Legislature, by including the catchall provision, intended to change the burden of proof for all fraud-related conduct gives undue weight to the catchall provision. There appear

9

to be few instances in which conduct coming within the catchall provision would not also come within one or more of the unfair practices described in § 201–2(4)(i)–(xx). Thus, the tail would be wagging the dog if a fraud standard of proof governed all unfair trade practices because of the presence of the catchall provision.

Finally, Judge Wettick noted that his ruling that private actions based on consumer protection legislation should be governed by a preponderance of the evidence standard of proof is consistent with appellate court case law in other jurisdictions, and with federal law. Id. at 23–24, citing, e.g., Cuculich v. Thomson Consumer Electronics, Inc., 317 Ill.App.3d 709, 251 Ill.Dec. 1, 739 N.E.2d 934 (2000) (the plaintiffs were required to prove a claim under the Consumer Fraud Act only by a preponderance of the evidence; the Consumer Fraud Act does not specifically require a greater standard of proof and the Act is intended to provide broader protection to consumers than common law fraud claims); Federal Trade Commission v. Tashman, 318 F.3d 1273, 1280 (11th Cir.2003) (applying a preponderance of the evidence standard for claims brought under the Federal Trade Commission Act). See Com. Acting by Kane v. Flick, 382 A.2d 762, 765 (Pa. Cmwlth 1978) (the Federal Trade Commission Act and the Lanham Trademark Act were the models for Pennsylvania's UTPCPL and, hence, we may confidently look to decisions under those acts for guidance in interpreting the Pennsylvania Act).

As in Eck, supra, Defendant essentially argues that the standard of clear and convincing evidence applies to any fraud claim brought under the UTPCPL. See Def.'s Concise Statement, 5/5/16. Because the Superior Court adopted Judge Wettick's sound reasoning on this issue, we find it on point and controlling.

Applying the Boehm decision to the present case, we conclude that Plaintiff merely had to establish a violation of the UTPCPL by a preponderance of the evidence. Having already found above that Plaintiff established all her claims by a preponderance of the evidence, Defendant's argument fails.

Having addressed Defendant's appeal issues, we now address Plaintiff's cross-appeal. In her Concise Statement, Plaintiff raises four (4) issues for the Court to review. Those issues in Plaintiff's own words are as follows:

1. [The Court] did not assess sanction damages authorized by 73 P.S. § 201-9.2. despite ample evidence of fraudulent conduct including knowledge of water infiltration from actual pre sale inspection.

2. The Court did not reassess amount of attorney fees for post-verdict costs to client and should do so when the appeal is denied because the victim's legal fees are continuing.

10

3. The Court erred by utilizing a punitive damage analysis and therefore declining to double or treble damages where our Supreme Court has held that the purposes of the UFTPCPL are best served when the Court is not "closely constrained" to punitive damages analysis. It held that the Court is free to exercise its discretion to closely address shady commercial practices because they are invariably intentional, extract benefit from victims by unfair advantage and need to be discouraged. Schwartz v. Rockey, 932 A.2d 885 (Pa. 2007).

4. The Court must assess sanction damages to make the risk of loss from the choice to conceal the defect greater than the cost from disclosure and cure before sale to insure that sellers' conduct conforms to law.

Pl.'s Concise Statement, 5/11/16.

We will address Plaintiff's issues out of order for efficiency purposes. Insofar as Defendant's claim is concerned that the Court erred by not reassessing the amount of attorney fees awarded to include post-verdict and appeal costs; we disagree with this contention.

We have already set forth our reasoning for awarding Plaintiff attorney fees in this matter. However, Plaintiff's claim for post-verdict and appeal costs is premature as this litigation is still commencing in the Superior Court. We also note that Plaintiff elected to file a cross-appeal in this matter, thereby incurring additional counsel fees. If this Court were to reassess the amount of attorney fees at this point, we would have to engage in speculation or hold multiple hearings. As this matter is currently on appeal, the Superior Court will be in the best position at the conclusion of the appeal to decide whether Plaintiff is entitled to post-verdict attorney fees. See Pa.R.A.P. 2744. Accordingly, we respectfully defer to the Superior Court on this issue.[12]

Plaintiff's remaining claims take issue with either the Court's purported punitive damage analysis or failure to award treble damages under the UTPCL. Plaintiff's arguments must fail. Even assuming arguendo that the Court applied a punitive damage analysis to Plaintiff's UTPCPL claim, this error was harmless. A plaintiff is not automatically entitled to treble damages" since such an award is within the discretion of the trial court. Johnson v. Hyundai Motor Am., 698 A.2d 631, 639 (Pa. Super. 1997).

We are mindful that the UTPCPL authorizes double or treble damages[13] but conclude that such a large award would be inappropriate in this case. Based on the facts of this case, the Court applied its discretion in rendering damages and by concluding that Defendant's conduct attributed directly to him was not egregious enough to warrant double or treble damages. Defendant testified at trial that he never set foot on the Property and did not have actual

---

[12] The Superior Court may remand the case to the trial court to determine the amount of damages authorized by Pa.R.A.P. 2744.

[13] A plain reading of the statute that upon the commission of a prohibited act in any of the enumerated subsections in § 201–2(4), the trial court "may, in its discretion, award up to three times the actual damages sustained, but not less than one hundred dollars ($100), and may provide such additional relief as it deems necessary or proper." 73 P.S. § 201–9.2(a). Accordingly, the legislature has vested the trial court with considerable discretion in the imposition of treble damages.

11

knowledge of either the water infiltration issue or sump pump estimate. Despite Defendant's trial testimony, he is still liable to Plaintiff under the principles of agency law. However, the Court did not conclude that this was the type of fraudulent or deceptive conduct giving rise to heightened damages. In other words, we did not find that Defendant's conduct warranted applying the damage multiplier authorized by the UTPCPL. Rather, the Court intended only to make the Plaintiff whole in awarding the actual damages incurred, i.e. the cost to repair the water damage and counsel fees. Accordingly, the Court's damage complied with the spirit of the UTPCPL and restored Plaintiff to the status quo.

For all the reasons set forth above, we ask the Superior Court to hold in accordance with this Opinion.

BY THE COURT:

_____
William P. Mahon,            J.